## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**THE MARK LAW FIRM, LLC**
Jamison M. Mark, Esq. (Bar ID No. 042392000)
jmark@newjerseyattorneys.com
675 Morris Ave Suite 102
Springfield, New Jersey 07081
T: (973) 845-6606 (main)
Attorneys for Plaintiff Omar Ledesma

| | |
|---|---|
| **OMAR LEDESMA**, | |
| Plaintiff, | CIVIL ACTION No. 2:21-CV-15143 |
| v. | **COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL,** |
| **CITY OF PATERSON; ANDRE SAYEGH; WILLIAM MCKOY; OSHIN CASTILLO; JOHN DOES 1-10 (Fictitious Names Representing Unknown Persons).** | |
| Defendants. | |

Omar Ledesma, by and through his attorneys, The Mark Law Firm, LLC, does hereby complain and alleged against Defendants as follows:

### INTRODUCTORY STATEMENT OF CASE

1.      Plaintiff Omar Ledesma brings this action pursuant to 42 USC §§ 1983 and 1985, and for counsel fees and litigation costs, pursuant to 42 USC § 1988 for the egregious violations under constitutional law, including violating Mr. Ledesma's freedom of speech, association and political beliefs.

2.      Additionally, in Plaintiff's pendant state-law claims, as an employee of the City of Paterson was subjected to retaliation for his involvement with and opposition to the Political Power in charge of the City, and was terminated for his political beliefs and position, but also for the

filling of a criminal complaint against Defendants, and was subjected to defamatory comments from Defendants.

**PARTIES**

3.      Plaintiff, **OMAR LEDESMA** (hereinafter "Plaintiff" or "Mr. Ledesma") is a citizen of Paterson New Jersey, County of Passaic, State of New Jersey, and during all relevant times, an employee of Defendant **CITY OF PATERSON.**

4.      Defendant **CITY OF PATERSON,** is a municipal corporation organized under the Laws of the State of New Jersey, was Plaintiff's employer at all relevant times, and has an official policy, practice and/or custom that violated the Plaintiff's rights.

5.      Defendant **ANDRE SAYEGH** (hereinafter "Defendant Mayor Sayegh"), during all times relevant, was the Mayor of Paterson, and as Mayor had supervisory authority over Plaintiff's employment, and is being sued in his individual and official capacity.

6.      Defendant **WILLIAM MCKOY** (hereinafter "Defendant McKoy" or "Defendant Councilman McKoy"), during all times relevant, was a City of Paterson Councilmen, close political ally of Mayor Sayegh, and as a Councilman had supervisory authority over Plaintiff's employment and is being sued in his individual and official capacity.

7.      Defendant **OSHIN CASTILLO,** (hereinafter Defendant Castillo" or "Defendant Director Castillo") was at all times relevant Director of the City of Paterson Health and Human Services, was upper management of the City of Paterson, had supervisory authority over Plaintiff's employment, and is being sued in her individual and official capacity.

8.      **JOHN DOES 1-10** are individual persons who are currently unknown but had authority, control and/or engaged in conduct to retaliation directly or indirectly against Mr. Ledesma for his political affiliation.

2

## JURISDICTION AND VENUE

9.     This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.

10.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants have minimum contacts within the District, and the cause of action accrued within this District pursuant to 28 USC §1983, §1985 and §1988.

11.     Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 (a), which provides for original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and involves a federal question.

13.     Plaintiff also invokes this Court's pendent and ancillary jurisdiction over Plaintiff's New Jersey State statutory and common law claims against Defendants.

## NOTICES

14.     For all causes of action common in law, Plaintiff has filed a timely notice of claim with the governmental entity City of Paterson on December 10, 2020, pursuant to N.J.S.A. § 59:8-8.  The appropriate 6 month waiting period has now lapsed, and Plaintiff has received no response and the City performed no investigation into these allegations.   The filing of this lawsuit is therefore timely and proper.

## FACTS COMMON TO ALL COUNTS

15.     Plaintiff Omar Ledesma (hereinafter "Mr. Ledesma") was employed by the City of Paterson (hereinafter "City" or "Paterson") until he was unlawfully terminated effective November 5, 2020 in retaliation for his political support of one or more candidates who opposed Mayor Andre Sayegh, and due to the filing of a criminal complaint against Councilman McKoy.

16.     The City of Paterson, as an employer, is a non-partisan municipality, and there is no requirement that an employee demonstrate any political support for the Mayor or any position of the Council.    In fact, every election in Paterson is supposed to be "non-partisan."

17.     Though not required as part of his employment with the City of Paterson, Mr. Ledesma is a democrat.

18.     Mr. Ledesma is a resident of the City of Paterson in the State of New Jersey has a long history of supporting various candidates within the City and is known as a political advocate in the City.

19.     For when there is opposition to the political party in power, there is also a long history of political retaliation to those who are not in power, for example and such *Farber v. City of Paterson and Heffernan v. City of Paterson,* and many, many others matters filed against the City that demonstrate the constant and persistent civil rights violations by its governing body and upper management of the City.

20.     In 2016 and prior, a group of supporters that included Mr. Ledesma, were part of a political movement to have Andre Sayegh elected to the City Council, and in fact, had canvassed votes for then-candidate Sayegh.

21.     During this time, it was known by then-candidate Sayegh that Mr. Ledesma was a "political friend" and a supporter of his.  During all times relevant, however, Mr. Ledesma was visible and known to be a supporter of Alex Mendez, also a democrat candidate and political member of the City of Paterson.    While Plaintiff supported Mayor Sayegh there were no issues of retaliation or backlash against Ledesma.

22.    Paterson Mayor Sayegh and former City Councilman Mendez, though both democrats, run very different campaigns and have different ideals and beliefs for the City of Paterson.  As a result, Mayor Sayegh and City Councilman Mendez are political opponents.

23.    In 2017 then-Councilman Sayegh decided to run for City of Paterson mayor.

24.    At that time, Alex Mendez also decided to run for mayor, and against Mr. Sayegh.

25.    Prior to the May 2018 Mayoral election, Mr. Mendez was a City Councilman and had to step down to in order run for Mayor.

26.    Mr. Ledesma was known as an advocate for Mr. Mendez and did not support then-Councilman Sayegh during this Mayoral election.

27.    Openly and publicly, during this Mayoral campaign, Mr. Ledesma supported then-candidate Mendez's campaign as his campaign lieutenant.  Again, a very public position.

28.    Mr. Ledesma was visible and known to be a supporter of Mr. Mendez's campaign, again well known by then-Councilman Sayegh and those who supported him.

29.    The candidates campaigned in 2017 through 2018, and in May 2018 then-Councilman Sayegh won, and Mr. Mendez lost, the Mayoral election.

30.    Mr. Ledesma was always by candidate Mendez's side during the election, even when he graciously conceded defeat.

31.    On July 1, 2018 Andre Sayegh was sworn in as Mayor of the City of Paterson.

32.    Upon Mayor Sayegh's swearing in, though Mr. Mendez was no longer a City of Paterson Councilman, Mr. Mendez remained very active and involved in Paterson's politics.

33.    In August 2018, Mr. Ledesma learned of and applied for a non-partisan civil service position with the City of Paterson.

34.     Prior to being hired, Mr. Ledesma met and interviewed with Paul Persaud, who hired him immediately due to his excellent skills and work ethic.

35.     Mr. Ledesma did not interview with Mayor Sayegh.  In fact, it is unknown if Mr. Sayegh was even consulted to discuss Mr. Ledesma's hire with the City of Paterson, and had no information that Mr. Ledesma was an Alex Mendez supporter, or more accurately, politically opposed and ran a candidate against Mayor Sayegh.

36.     Mr. Ledesma did his job without incident and was routinely commended by Mr. Persaud for doing an excellent job.

37.     In November 2018 five (5) Paterson Board of Education positions became available.  In the campaign for the five (5) open positions, Mayor Sayegh supported five (5) candidates and Alex Mendez supported five (5) different candidates.

38.     During the election, Mr. Ledesma once again campaigned for the 5 "Mendez" candidates.  During the election, two of the five seats became open because then-Board members Flavio Rivera and Lilisa Mimms ran for City Council.  Mr. Rivera was supported by Mr. Mendez and Mr. Ledesma.  Ms. Mimms was supported by Mayor Sayegh and Ms. Castillo.

39.     As part of the School Board election, Mr. Mendez supported Robinson Rondon and Eddie Olivares and Mr. Ledesma were their campaign managers.  During this time, Oshin Castillo was re-elected to Board and it was well known she was, and is, a strong supporter of Mayor Sayegh.  Mayor Sayegh therefore now controlled 4 seats on the Board of Education.

40.     When the final vote came in, Mayor Sayegh's candidates took three positions, and Mr. Ledesma's candidates took the remaining positions, including both Mr. Rondon and Mr. Olivares who won their respective seats.  Both candidates were elected to the Board of Education.

41.     The Board members were sworn in January 2019.

42.     Since August 2018, and during these elections Mr. Ledesma remained an employee of the City, and his supervisor remained Mr. Persaud.

43.     On March 13, 2019, however, The Paterson Times published a story alleging that Mayor Sayegh was "targeting" Mr. Mendez's political allies who were City employees.

44.     The story clearly had referenced Mr. Ledesma as the person who Mayor Sayegh was "targeting."

45.     Then, on May 15, 2019, Mayor Sayegh's political supporter, Oshin Castillo was tapped by the Mayor to be Director of the Paterson Health and Human Services.

46.     At this time, Ms. Castillo was also the President of the School Board.

47.     Ms. Castillo was an opponent of Mr. Ledesma during the prior School Board election, and is a known supporter of Mayor Sayegh, i.e., which is how she received the "promotion" to the Director position.

48.     Learning of the news that Ms. Castillo was about to become his boss, Mr. Ledesma spoke to Mr. Persaud about his position fearing for his job.

49.     Mr. Persuad advised that despite having saved the City thousands of dollars in his dual-acting position with the City, he was being sent back to his position as "Health Officer" and had no ability to help Mr. Ledesma.

50.     It was confided in Mr. Ledesma by another employee that Mayor Sayegh had replaced Mr. Persuad with Ms. Castillo because "*Paul is not a Mayor's pick*," implying that because Ms. Oshin is part of the Mayor's political circle, she was chosen to replace Mr. Paul who is not in the Mayor's circle.

51.     Upon taking her position, it was evident that Ms. Oshin took immediate steps to harass Mr. Ledesma due to his prior political position and support of Mr. Mendez and other Board of Education candidates and because he had opposed her position (and the Mayor's).

52.     Ms. Castillo became a confirmed employee of Paterson as Director of Paterson Health and Human Services, and Mr. Ledesma's boss, even sharing the same office.

53.     On May 20, 2019 Mr. Ledesma was in NY City, attending an event for a non-profit organization.  The event was not a political event and was a fundraiser.  Mr. Ledesma did, however, attend the event with Mr. Mendez.  During the event, the two took a photo with each other, and Mr. Ledesma posted said photograph on his Facebook page.

54.     Mr. Ledesma also happens to be "Facebook friends" with Mayor Sayegh.  Within minutes, at 10:09 PM, Mayor Sayegh sent a text to Mr. Ledesma, with an attachment of the photo with Mr. Mendez, but did not type anything other than sending the photo.

55.     Mr. Ledesma responding to Mayor Sayegh's no-too-cryptic text with: "whats up Mayor?"  Mayor Sayegh responded "Did you send me that pic," in response to which Mr. Ledesma wrote "No, you sent it to me."

56.     Despite knowing the number of who sent Mayor Sayegh the Ledesma/Mendez photograph, oddly the Mayor wrote: "I just received it from a number I don't recognize."

57.     Mr. Ledesma questioned if the photograph was being sent to harass him and put him in a difficult position.  Mr. Ledesma had referenced the prior Paterson Times article quoting that City of Paterson workers who supported Mr. Mendez were being targeted by Mayor Sayegh.

58.     During their text exchange, Mr. Ledesma advised that he did not feel that he was being targeted (as the March 13, 2019, article suggested), and he [Omar Ledesma] was just trying to do his job.

8

59.     Mr. Ledesma also pointed out that he was 100% loyal to Mr. Mendez and would support him in the 3rd Ward.   Mayor Sayegh responded "*No need to explain."*

60.     Mayor Sayegh advised Mr. Ledesma that it was not him who was after Mr. Ledesma, …"*but apparently someone is trying to undermine you.*"

61.     Once Ms. Castillo took over as Mr. Ledesma's supervisor, she started to harass him daily.  For example, never having been required to do so under Mr. Persaud, and no other employee being required to do so, Ms. Castillo required Mr. Ledesma to report in, keep a log of his assignments and whereabouts, and took his cell phone from him.  When asked why, she simply told Mr. Ledesma that "*he doesn't need it*," and they can call the office if they need to make an appointment or talk.

62.     In fact, on December 19, 2019, Ms. Castillo came in to meet with Mr. Ledesma and called in his Union President, Hazel Hughes to act as a witness.

63.     Ms. Castillo sought to discipline Mr. Ledesma for his "time coming in and out of the office."  Though he never had a schedule before, he was now told that he would have a set schedule and be required to come in at 8:30 and leave at 4:30.  He was required to log his hours and constantly report in throughout the day.

64.     On December 23, 2019, Mr. Ledesma was scheduled for and did go on vacation to the Dominican Republic to visit family.  While in the Dominican Republic, Mr. Ledesma had a very unfortunate motorcycle accident on January 4, 2020.  Though Mr. Ledesma was to return from his vacation and report to work on January 6, 2020, he was in the hospital due to the accident.

65.     Despite not being the first thing on their minds, Mr. Ledesma's family did reach out to the City to let them know of the motorcycle accident, and that Mr. Ledesma needed

additional time off from work to recover from the accident.  While in his hospital bed, Mr. Ledesma posted a Facebook photo to say that he was getting better.

66.     On or about January 16 or 17, 2020 Mr. Ledesma returned to the United States. Upon his return, he received in the mail a letter dated January 14th from City of Paterson Business Administrator Vaugh McCoy asserting that Mr. Ledesma had been terminated for "job abandonment."

67.     Mr. Ledesma challenged his termination through his Union, and based upon the obvious information, and a hearing at the end of January, Mr. Ledesma was returned to work the first week of February.

68.     In February 2020 Mr. Ledesma took the civil service test for the purpose of securing his position from provisional to permanent.  Despite his excellent work history, Ms. Castillo continued to require Mr. Ledesma to set a work schedule, fill out and follow a logbook and schedule, and told him that she wanted to know where he was at all times.  As a good employee, Mr. Ledesma did not complain and complied with the schedule created for him.

69.     In March 2020 the Covid-19 Pandemic hit New Jersey hard, and Mr. Ledesma's schedule was reduced to working only two (2) days a week.

70.     As was permitted under the Governor's Executive Orders, Mr. Ledesma took an eight (8) week leave of absence to take care of his grandmother, which started in July 2020 and he was to return in September 2020.  His leave was approved by the City of Paterson.   Mr. Ledesma returned to work and did his job.

71.     Mr. Ledesma continued working and remained active in Paterson politics.

72.     Mr. Ledesma remained affiliated with Mr. Mendez as his "Political Lieutenant," and opposed Mayor Sayegh's team's election run.

73.     In May 2020 Defendant William McKoy, the longest serving member of the City council was defeated in his bid for reelection in the 3rd Ward by Alex Mendez.

74.     Defendant McKoy who had lost the election in May, challenged Mr. Mendez claiming voter fraud.    A new election was held, and Alex Mendez defeated Defendant McKoy for a second time for the 3rd Ward City Council position, with Mr. Ledesma's loyal support.

75.     On or about October 24, 2020, during the re-election and prior to the November 3rd vote, Mr. Ledesma posted a video (a debate on YouTube) of Mayor Sayegh talking at a table, and Mr. Ledesma quoted Mayor Sayegh stating that Defendant McKoy was not fit for his position and had been a rubber stamp for the prior Torres administration.

76.     A day later, again, during the campaign on October 25, 2020, Mr. Ledesma again posted a YouTube debate video and wrote: "*A reminder from Andre Sayegh*" on various social media platforms.

77.     The video which was not flattering and clearly upset Defendant McKoy.  In fact, after the posting of the video, Defendant McKoy followed and confronted Mr. Ledesma while Mr. Ledesma was meeting voters and campaigning for Mr. Mendez around the City.

78.     On one particular instance on October 31, 2020, a Saturday, when Mr. Ledesma was working the **Get Out To Vote** ("GOTV"), while on his day off, and was driving his personal vehicle, he was accosted by Defendant McKoy.

79.     In addition to his political aspirations, Mr. Ledesma, in his personal life, is a City of Paterson Health Officer.  In his position, he drivers his personal vehicle and bearing a City of Paterson placard to identify his position with the City while conducting inspections.   The placard is given to all similar employees, who similarly use the placard in their personal vehicle for City work and to inspect City businesses.

80.     Mr. Ledesma kept the City Placard in his vehicle's windshield.

81.     On this particular date, after work, Mr. Ledesma was talking to voters to make sure they were voting, helping them with anything they needed to vote, answering questions and of course, supporting his candidate, Alex Mendez.

82.     Then without warning or provocation, a red SUV began aggressively following Mr. Ledesma around the City of Paterson.

83.     Mr. Ledesma recorded the incident.

84.     After Mr. Ledesma had stopped his vehicle and got out to talk to voters (17th & E. 37th), former-Councilman Defendant McKoy stopped his car and aggressively approached Mr. Ledesma and began to harass him, yelling and becoming disruptive.

85.     Defendant McKoy then without consent went into and started searching Mr. Ledesma's car.  Then, in retaliation for his support of Alex Mendez and opposition of Mayor Sayegh, Defendant McKoy contacted his "political lieutenant," Ernest Rucker, who also began to follow and harass Mr. Ledesma.

86.     Defendant Rucker took pictures of Mr. Ledesma and posted them on social media claiming that Mr. Ledesma was going to lose his job.  Rucker then continued to harass Mr. Ledesma by repeatedly texting and calling his cell phone and threatened Mr. Ledesma to "straighten this out."

87.     Defendant McKoy, Mr. Rucker and Director Castillo all support Mayor Sayegh, and belong to the same political party.

88.     Mr. Ledesma ignored Mr. Rucker, who continued to call and text Mr. Ledesma repeatedly all the way through November 1, 2021 even calling him at 12:06 AM.

89.     Because Mr. Rucker would not stop calling and harassing him, on Sunday, November 1, 2020, Mr. Ledesma went to the Paterson Police Department and filled out a criminal harassment report against a Defendant Councilman McKoy, his wife, and Mr. Rucker.

90.     Mr. Ledesma provided ample evidence such as the video, the text messages, and the phone log.  Mr. Ledesma was told by the Paterson Police Department that it would take a couple days to prepare report and that he should return to pick it up on Thursday or Friday.

91.     Mr. Ledesma went to work on Monday, November 2, 2020 but did not see Defendant Castillo at work.  This fact struck Mr. Ledesma as being rather odd.

92.     Then, on November 3, 2020 there was a national, state and local election.

93.     For this reason, Mr. Ledesma was off from work, and campaigned for his candidates as he had done in previous elections.

94.     During these elections, Mr. Ledesma worked as a volunteer at a polling location.

95.     At this particular polling station, Defendant McKoy was also present with a group of his own political supporters.

96.     While Mr. Ledesma was at the polling station, Mr. McKoy, unprovoked, walked out and started taking pictures of Mr. Ledesma's car, and continued to harass and instigate a confrontation with Mr. Ledesma.  Fortunately, one of the volunteers took a video of Mr. McKoy taking pictures of Mr. Ledesma and his car.

97.     On November 4, 2020, the day after the election, Mr. Ledesma went to work at the City and began his Health Office inspections as usual.

98.     When Mr. Ledesma returned to the City Hall, and went into his office, Defendant Director Castillo's secretary and Clerk Margarita Padilla told Mr. Ledesma that he had been

scheduled for a meeting the next morning with Director Castillo and his Union President, Hazel Hughes.

99.     Before their meeting, Ms. Hughes confided in Mr. Ledesma and asked him if he was "*Feeling okay,*" and "*Doing his job.*"  Ms. Hughes also then asked Mr. Ledesma for a calculation of his unused PTO and to which Mr. Ledesma complied.  Ms. Hughes then stated; "*Let me see again what she wants with you.  She doesn't like you.*"

100.     The next day, Defendant Director Castillo was not available for her meeting with Mr. Ledesma, and he was told that the meeting was rescheduled with the Director for later that afternoon.  Mr. Ledesma left the building and began his City inspection rounds.

101.     Mr. Ledesma was under the impression the "meeting" was due to Defendant Director Castillo's baby shower, because he wanted to share in her excitement of the new baby, Mr. Ledesma went out and bought a baby cake for Ms. Castillo.

102.     Mr. Ledesma then went to his office to meet with Defendant Director Castillo for their teleconference meeting.

103.     Before entering the office for the call, Mr. Ledesma overheard Defendant Director Castillo on the phone with Ms. Hughes and heard Ms. Castillo state: "***it's the placard.***"

104.     Mr. Ledesma entered the call and was immediately advised by Defendant Director Castillo "***Officially as of 4:30 today you are terminated.  Return your ID, badge and placard***."

105.     Mr. Ledesma was advised that he was being terminated because he was a provisional employee, who did not possess job protections.

106.     Mr. Ledesma had sat for and was awaiting pending results from Civil Services, for the title of License Inspector, that did come through effective February 18, 2021.

107.    Mr. Ledesma was shocked to learn of this news, stood up, thanked everyone, and walked out.

108.    Ms. Hughes asked Mr. Ledesma to meet outside and advised to "**_Get your stuff out of the car before 4:30, and if you go back to the office, you'll probably be arreste_**d."

109.    Ms. Hughes then provided Mr. Ledesma with some advice, and stated: "if I were you, I would get myself an attorney."

110.    Mr. Ledesma went to his desk to retrieve his belongings, and was approached by Ms. Padilla, who asked him what he was doing.  Mr. Ledesma explained that he had just been fired, and Ms. Padilla was shocked and responded, "**_You got fired, no way_**."

111.    Later, Mr. Ledesma met with and spoke to City Council President Flavio Rivera and Personnel Chair of the Department Maritza Davila to advise that he had just been terminated.

112.    Neither Flavio River nor Maritza Davila had been told why Mr. Ledesma was terminated.  After the fact, many on the City Council were of the belief that Mr. Ledesma's termination was political retaliation.

113.    During the City Council Meeting on November 10, 2020 a Councilman stated during his closing remarks that the administration should be more careful with its employees, and he had heard that an employee [Mr. Ledesma] had been fired because of his political ties and because he had supported another candidate.

114.    Others who are members of the City of Paterson, involved in politics, even those who are known not to have supported Mr. Mendez and Mr. Ledesma, have come out in support of Mr. Ledesma.  For example, Robin Spencer was a political foe of Mendez but came out publicly and posted a video saying that she was not in support of the City terminating Mr. Ledesma and "it was wrong."

## COUNT I

### (Violation of 42 U.S.C. §1983 – Constitution of the United States – Exercise of Freedom of Speech - 1st and 14th Amendments)

115.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in Paragraphs 1-114 as if fully set forth herein.

116.    Defendants violated the First and Fourteenth Amendments to the United States Constitution by unlawfully terminating, for reasons based solely on political affiliation, plaintiff's employment, thereby denying him the rights and protections conveyed by the Constitution, in violation of 42 U.S.C. § 1983 and 1985, and allowing an award pursuant to 42 U.S.C. § 1988, for example, but not limited to:

a)    At all times material to this complaint and notwithstanding their oath to the contrary Defendants have sought to punish Plaintiff for exercise of protected speech and association activity as Defendants were undesirable to them, notwithstanding the protected status of the activity.

b)    At all times material to this Complaint, it also became Defendants' purpose to derail, stymie, and thwart plaintiff's career.

c)    As an illustration, and outlined above, it was reported that Plaintiff was the political target of Mayor Sayegh; Plaintiff was a political foe of Mayor Sayegh, who appointed his crony Oshin Castillo, an adversary to Plaintiff and his political candidate Mendez in the Board Elections, as Director of the department and Plaintiff's supervisor, ultimately terminated his employment the very next day after the election on November 4, 2020.

d)    Defendants' actions described herein violate the Freedom of Speech Clause of the First Amendment to the United States Constitution, which prohibits government

officials from subjecting any individual to retaliatory action in reprisal for the exercise of the right of speech.

e)    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

f)    Plaintiff had been supporting Council Alex Mendez in two separate campaigns. During the second campaign, Councilman McKoy accosted Plaintiff on several occasions while he was working on behalf of Mr. Mendez's campaign and called upon his political lieutenant, Mr. Rucker, to harass and intimidate Mr. Ledesma.

g)    Thereby, while acting under color of law and by using power that they possessed by virtue of state law, defendants intentionally deprived plaintiff of his constitutional right to freedom of speech and association by terminating them from their positions as non-policy making employees based on his political affiliation.

h)    In retaliation for Plaintiff's support of opposition candidates and his refusal to assist the campaign of Mayor Sayegh, for his ongoing and public political speech as outlined above, Defendants began a campaign of unfair criticism of Plaintiff's work performance and ultimately terminated his employment with the City of Paterson.

117.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged Plaintiff.

118.    As a direct and proximate result of defendants' actions, Plaintiff has suffered loss of past and future income.

119.    As a direct and proximate result of defendants' actions, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including, but not limited to,

stress, anxiety, embarrassment, impairment of reputation, loss of self-esteem, loss of sleep, emotional pain and suffering, and other stress-related ailments.

120.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff, who is entitled to damages pursuant to 42 U.S.C. § 1988.

## **COUNT II**

*(Violation of 42 U.S.C. §1983 – Constitution of the United States –*
*Exercise of Right to Peacefully Assemble, and*
*Freedom of Political Association)*

121.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-120 as if fully set forth herein.

122.    The Defendants' actions described herein violate the Freedom of Speech Clause of the First Amendment to the United States Constitution, which prohibits government officials from subjecting any individual to retaliatory action in reprisal for Plaintiff's lawful exercise of his 1st Amendment rights to assemble and political association.

123.    As outlined in greater detail above, Mr. Ledesma was known as an advocate for Mr. Mendez and did not support then-Councilman Sayegh during the Mayoral election, nor did he support Councilman McKoy, but in both instances supported their political foe.

124.    Openly and publicly, during this Mayoral campaign, Mr. Ledesma supported then-candidate Mendez's campaign as his campaign lieutenant.  Again, a very public position.

125.    Mr. Ledesma was visible and known to be a supporter of Mr. Mendez's campaign, again well known by then-Councilman Sayegh and those who supported him.

126.    The candidates campaigned in 2017 through 2018, and in May 2018 then-Councilman Sayegh won, and Mr. Mendez lost, the Mayoral election.

127.    Mr. Ledesma was always by candidate Mendez's side during the election, even when he graciously conceded defeat.

128.    On July 1, 2018 Andre Sayegh was sworn in as Mayor of the City of Paterson.

129.    In November 2018, Plaintiff supported the campaign of several School Board Candidates who defeated Mayor Sayegh and Councilman McKoy's candidates.

130.    On March 13, 2019, a news paper article identified Mr. Ledesma as being a direct target of the Mayor due to Mr. Ledesma's employment in the City of Paterson and opposition to the Mayor's candidates.

131.    In May 15, 2019, Mayor Sayegh's political supporter, Oshin Castillo, who is a political appointment from the Mayor became Plaintiff's boss, and Ms. Castillo terminated Plaintiff's employment after the November 2020 Election in direct retaliation for his efforts in canvassing votes and speaking to City voters, and for his political views.

132.    For exercising his right to freedom of speech and for his political association, Plaintiff was denied the right to do so, and lost out on opportunity to continue to exercise his free political speech in favor of Mr. Mendez but was harassed and threated in such a manner by McKoy to prevent Plaintiff from continuing.

133.    For exercising his right to freedom of speech and for his political association, Plaintiff was denied the right to do so, and lost out on opportunity to continue to exercise his free political speech in favor of Mr. Mendez but was harassed and terminated from his employment by Defendant Sayegh, through the political commonality of Defendant Castillo.

134.    As a direct and proximate cause oof Defendants' conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

135.    As a direct and proximate result of defendants' actions, Plaintiff has suffered loss of past and future income.

136.    As a direct and proximate result of defendants' actions, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including, but not limited to, stress, anxiety, embarrassment, impairment of reputation, loss of self-esteem, loss of sleep, emotional pain and suffering, and other stress-related ailments.

137.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff, who is entitled to damages pursuant to 42 U.S.C. § 1988.

## COUNT III

### *(Violation of 42 U.S.C. §1983 –Constitution of the United States – Political Retaliation)*

138.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-137 as if fully set forth herein.

139.    Under Article I, Section 1 to the Constitution of the State of New Jersey, government officials are prohibited from subjecting any individual to retaliatory action in reprisal for the exercise of the protected right of speech and thought.

140.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged Plaintiff.

141.    Defendants violated the First and Fourteenth Amendments to the United States Constitution by unlawfully terminating, for reasons based solely on personal Political Association, Plaintiff's employment, thereby denying him the rights and protections conveyed by the Constitution, in violation of 42 U.S.C. § 1983 and § 1985, and allowing an award pursuant to 42 U.S.C. § 1988, to wit:

a) During the May 2018 Mayoral election, Plaintiff was a visible and known supporter of Alex Mendez, an opposition candidate of Defendant Mayor Sayegh.

b) On July 1, 2018 Mayor Sayegh was sworn in as the Mayor of the City of Paterson.

c) Thereafter, Mayor Sayegh appointed his political supporter Defendant Oshin Castillo to the position of Director of Paterson Health and Human Services.

d) In November of 2018, Plaintiff supported Alex Mendez in his campaign to fill five open positions in the Paterson Board of Education.  These efforts were in direct opposition to Mayor Sayegh, who himself supported 5 different candidates for the board positions.

e) In retaliation for Plaintiff's support of opposition candidates and his refusal to assist the campaign of Mayor Sayegh, Defendants began a campaign of unfair criticism of Plaintiff's work performance and ultimately terminated his employment with the City of Paterson.

f) Thereafter once Sayegh and McKoy lost the November election, Plaintiff was immediately terminated from his position with the City of Paterson in direct retaliation for his political support and activities for the Political party opposing Sayegh and McKoy.

142.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged Plaintiff.

143.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff, who is entitled to damages pursuant to 42 U.S.C. § 1988.

## COUNT IV

### *(Common Law Conspiracy 42 U.S.C. § 1985[3])*

144.    Plaintiff repeats and realleges the above-mentioned allegations contained in Paragraphs 1-143 as though set forth more fully herein.

145.    Defendants and each of them have entered into conspiracies with each other, at one time or another, to deprive Plaintiff, either directly or indirectly, of their privileges and immunities under the laws, specifically Plaintiff's' civil rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

146.    Section 1985(3) provides as follows: "If two or more persons in any State or Territory conspire...for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws...whereby another is injured ...or deprived of having and exercising any right of privilege of a citizen of the United States, the party of injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

147.    As outlined above, the Democratic Party members who opposed Plaintiff and his political constituents, including Alexander Mendez, conspired against Plaintiff.  Those persons, known as of this date who have conspired against Plaintiff are: William McKoy (councilman), his wife and Mr. Rucker, Mayor Andre Sayegh, and Director Oshin Castillo.

148.    Pursuant to, and in furtherance of this common scheme, Defendants caused, allowed, suffered, aided, and suffered an unlawful effort to discriminate against him, to harass him, to subject him to unequal treatment.

149.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

22

150.    The Defendants' actions, orders, approvals, and omission are therefore actionable under 42 U.S.C. § 1985(3).

151.    Plaintiff Ledesma was and continues to be injured as a direct and proximate result of said overt acts.

152.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity, and is incurring legal expenses and other expenses as a result of Defendants' actions.

153.    The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

154.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff.

## COUNT V

### (N.J.S.A. 10:6-2(c) Violation of the New Jersey Civil Rights Act)

155.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-154 as if fully set forth herein.

156.    The New Jersey Civil Rights Act provides relief to any person who has been deprived or interfered with the enjoyment of any substantive due process or equal protection rights, privileges or immunities secured by the federal and state constitutions or implementing laws.

157.    Defendants deprived or interfered with Plaintiff's exercise of substantive rights protected by the state and federal constitution, as set forth above.

158.    Defendants acted under the color of law when harassing, threatening and terminating Plaintiff's employment in violation of the New Jersey Civil Rights Act.

159.    The foregoing actions were taken pursuant to an official and extant policy and practice of Defendants, and were taken by individuals with final policymaking authority over such actions.

160.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

161.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff.

162.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity, and is incurring legal expenses and other expenses as a result of Defendants' actions.

163.    The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

## COUNT VI

### *(Violation of Article I to the Constitution of the State of New Jersey – Free Speech)*

164.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-163 as if fully set forth herein.

165.    The Defendants' actions described herein violate the Freedom of Speech Clause of Article I to the Constitution of the State of New Jersey which prohibits government officials

from subjecting any individual to retaliatory action in reprisal for the exercise of the protected right of speech and thought.

166.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

167.    The Defendants' actions, orders, approvals, and omissions as aforesaid give rise to a cause for a cause of action for damages directly under the Constitution.

168.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

169.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity, and is incurring legal expenses and other expenses as a result of Defendants' actions.

170.    The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

171.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff.

## COUNT VII

*(Violation of Article I to the Constitution of the State of New Jersey*
*Right of Political Association and to Peacefully Assemble)*

172.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-171 as if fully set forth herein.

173.    As outlined in Paragraphs 1-114, and Count II, Plaintiff enjoys the right under Article I, Section 1 of the New Jersey State Constitution to have the unalienable right to exercise the State of New Jersey 1st Amendment Rights afforded to its citizens, and as such Plaintiff engaged in such First Amendment Activities.

174.    In violation of these inalienable constitutional rights, each and all Defendants deprived Plaintiff of his protected first amendment activities, and the exercise of his 1st Amendment Rights, protected by the First State of New Jersey Constitution.

175.    Each and all Defendants deprived the Plaintiff of this right under the color of State law.

176.    In their conduct set forth in this Complaint, each of the Defendants acted under color of state law, which said conduct damaged plaintiff.

177.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity, and is incurring legal expenses and other expenses as a result of Defendants' actions.

178.    The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

179.    Defendants have engaged in behavior that violates Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff.

## COUNT VIII

### *(42 U.S.C. § 1983 – Policy, Custom & Practice)*

180.    Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-179 as if fully set forth herein.

181.    The City of Paterson (a final policymaker), its Mayor, certain Councilmembers, and members of management of the city (i.e. Defendants) had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, customs and procedures which operated to deprive Plaintiff of his constitutional rights.

182.    Defendants are accountable under 42 U.S.C. § 1983 because they established policies and practices that were intended to and did encourage, endorse and permit their agents and employees to violate the constitutional rights of Plaintiff and other similarly situated persons. At a minimum, these Defendants were deliberately and/or recklessly indifferent to such constitutional violations.

183.    The unconstitutional policies, practices, customs and procedures of Defendants City of Paterson, Mayor Sayegh, Councilman McKoy and Supervisor Castillo include, but are not limited to:

A.    A policy, practice, custom or procedure of failing to properly train and supervise employees, including themselves, to avoid violating ones right to exercise their right to freedom of speech, association and political beliefs.

B.    A policy, practice, custom or procedure of violating persons of the general public who due exercise their 1st amendment rights

C.    A policy, practice, custom or procedure of violating the constitutional rights of persons of the general public who engage in Protected First Amendment Activities;

D.    A policy, practice, custom or procedure expressing and acting with motivation to retaliate against persons who oppose their own political association and/or take adverse action against those who exercise political ideals adverse to their own;

E.    A policy, practice, custom or procedure of retaliating against employees of the City who exercise their 1ste amend rights if contrary to their own beliefs;

F.    A policy, practice, custom or procedure of retaliating against employees of the City because of their protected first amendment activities different to their own activities;

G.    A policy, practice, custom or procedure of failing to eliminate, stop or control the City's violations of employees and/or citizens of the City's right  to engage in protected first amendment activities, and/or who exercise their 1st Amendment Rights.

H.    A policy, practice, custom or procedure of covering up retaliation, harassment and misconduct by falsifying and/or fabricating information and reports rather provide a true and accurate version of events;

I.    A policy, practice, custom or procedure of failing to discipline City employees or take remedial action against City Mayor and Council members who violate the Constitution or law or otherwise transgress the rights of persons of the City;

J.    A policy, practice, custom or procedure of being deliberately indifferent to the violation of the law by the City employees, Mayor and council members to the determinate of the constitutional rights of persons.

184.    Defendants City of Paterson, Mayor Sayegh, Councilman McKoy and Supervisor Castillo acquired and used the policies, practices, customs and procedures described above to violate and deprive Plaintiff the right to exercise his 1st Amendment Rights and engage in protected first amendment activities.

185.    These policies, practices, customs and procedures, as described above, were implemented intentionally and/or recklessly to deprive Plaintiff of his constitutional rights and were a direct and proximate cause of the Constitutional violations and injuries.

186.    The foregoing actions were taken pursuant to an official and extant policy and practice of Defendants and were taken by individuals with final policymaking authority over such actions.

187.     As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

188.     The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his Civil Rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

189.     Defendants have engaged in behavior that violates Plaintiff's Constitutional Rights and have thereby irreparably injured Plaintiff.

## **COUNT IX**

### *(Respondeat Superior)*

190.     Plaintiff realleges that alleges the above-mentioned allegations contained in paragraphs 1-189 as if fully set forth herein.

191.     At all times herein mentioned, the defendants, City of Paterson, Mayor Andrew Sayegh, Councilman Williams McKoy, and Director Oshin Castillo were members of the City of Paterson

192.     At all times herein mentioned, the defendant City of Paterson had a duty and responsibility to hire, train, control, and supervise any and all employees of the City's including, but not limited to, Defendant City's governing body, Mayor, Council and its upper management.

193.     At all times herein mentioned, Defendant City's governing body, Mayor, Council and its upper management had a duty and responsibility to oversee, monitor, manage and control the day-to-day affairs of the City of Paterson.

194.    As outlined above, the Defendant City's governing body, Mayor, Council and its upper management were and remain negligent and careless in retaining, hiring, and providing professional and competent employees and management personnel at the City, and therefore due to same violated Plaintiff's constitutional rights.

195.    Defendant City of Paterson as a public entity and employer, is vicariously liable for the acts of the individual Defendants Mayor Sayegh, Councilman McKoy and upper management Director Castillo, who oversee, monitor, manage and control the day-to-day affairs of the City of Paterson and purports to act on Defendant City's behalf each and every day.

196.    Plaintiff relied upon individual Defendants to not violate the law and the Constitution as a citizen and employee of the City, because of their Apparent Authority and/or individual Defendants were aided and abetted in their misconduct by the existence of an agency relationship with Defendant City of Paterson, as a public body and employer.

197.    At all times herein mentioned, Defendants violated Plaintiff's trust, the Paterson's citizens trust when they violated Plaintiff's civil rights.   Defendants' obligations and responsibilities to Plaintiff were non-delegable, they acted as the master of their various employees, and they are liable under the doctrine of respondent superior.

198.    As a direct and proximate result of the aforesaid conduct of all named defendants, Plaintiff has been and continues to be harmed as previously set forth herein at length.

199.    The foregoing actions were taken pursuant to an official and extant policy and practice of Defendants and were taken by individuals with final policymaking authority over such actions.

200.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting

in loss of companionship, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

201.    The foregoing actions were knowing, willful, deliberate and a collaborative effort of the Defendants to violate the law and deprived Plaintiff of his Civil Rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

202.    Defendants have engaged in behavior that violates Plaintiff's Constitutional Rights and have thereby irreparably injured Plaintiff.

## COUNT X

### *(New Jersey Conscientious Employee Protection Act. –*
### *(N.J.S.A. § 34:19-1 – CEPA)*

### *(As Against All Defendants)*

203.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1-202 as if fully set forth herein.

204.    Plaintiff engaged in protected conduct as set forth in the New Jersey Conscientious Employee Protection Act., *N.J.S.A.* 34-19-1, et seq., in that he objected to, threatened to disclose and/or refused to participate in conduct which he reasonably believed was (1) in violation of a law or regulation promulgated under law, and (2) in violation of a clear mandate of public policy affecting public health, safety or welfare.

205.    To wit, on October 31, 2020 Plaintiff was harassed, intimidated and felt threatened for his safety due to the conduct of Paterson employee and Councilman William McKoy, his wife and their confidant Ernest Rucker.

206.    The actions of Councilman McKoy were recorded and submitted to the press to publicly identify the criminal activity of Councilman McKoy.

207.     Contemporaneously, Plaintiff also took the recording of events, and filed a criminal complaint with the evidence of the recording with the City of Paterson Police Department on November 1, 2020.  Plaintiff made significant criminal allegations that the conduct of Mr. McKoy constituted harassment and with detail outlined the events of October 31st in which he was harassed and threatened, all of which was caught on video.

208.     On November 1, 2020 Plaintiff reported said incident and harassment due to Councilman McKoy's status as a councilman and his connection to Plaintiff's employer.

209.     Plaintiff's action of filing a criminal complaint for unlawful conduct of the City's Councilman is protected conduct under the NJ Whistleblower statute.

210.     Due to Plaintiff's criminal complaint against Paterson Councilman McKoy and Mr. Rucker, Plaintiff was terminated from his employment with the City of Paterson three (3) days later on November 4, 2020.

211.     Consistent with New Jersey's public policy of encouraging citizens to report suspected criminal violations to the proper authorities in order to ensure proper enforcement of both state and federal penal laws, and because Plaintiff reported acts of harassment perpetrated by Defendant Rucker, Councilman McKoy and his wife, Ms. McKoy.  Plaintiff suffered retaliation for these complaints when his hours were changed and shortly thereafter, his employment terminated.

212.     Plaintiff reasonably believed Councilman McKoy's conduct was a violation of the law for criminal harassment and reported same to an outside enforcement authority, i.e., Paterson Police Department.

213.     Plaintiff's objection and complaints submitted to the Police Department of the concerted conduct of Defendant Rucker, Councilman McKoy and Mrs. McKoy's to harass

Plaintiff is protected activity pursuant to the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. §34:19-3c(1).

214.    The conduct of aforesaid Defendants, and those they acted with, was criminal and in violation of *N.J.S.A.* §2C:33-4. (harassment).

215.    Defendants' violation of the criminal statute, *N.J.S.A.* §2C:33-4, constitutes a violation of a law, or a rule or regulation promulgated pursuant to law under *N.J.S.A.* 34:19-3c(1).

216.    Plaintiff was discharged by Defendants in retaliation for his submitting complaints and filing a police report with respect to Defendants' efforts to harass him, including but not limited to, calling at extremely inconvenient hours and otherwise engaging in a course of alarming conduct or of repeatedly committed acts with the purpose to alarm or seriously annoy Mr. Ledesma.

217.    Defendants' conduct was in violation of CEPA, *N.J.S.A.* §34:19-1, et. seq.

218.    Defendants engaged in, participated in, condoned, ratified, perpetuated and/or aided and abetted the aforesaid CEPA violations.

219.    Defendants' conduct and actions were malicious and/or undertaken with a wanton and willful disregard of and for Plaintiff.

220.    As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of self-esteem, loss of standing in the community, physical and mental injury, the loss of opportunity for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

## COUNT XI

### *(Common Law Wrongful Discharge -*
### *Pierce v. Orth Pharmaceutical, 84 N.J. 58 (1980))*

221.   Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1-220 as if fully set forth herein.

222.   Defendants' discharge of Plaintiff violated the clear mandate of public policy of terminating an employee for objecting to or refusing to participate in illegal conduct such as when Plaintiff (a) notified the Paterson Police Department of Defendants' repeated efforts to harass him in violation of *N.J.S.A.* §2C:33-4, and (b) objected to Defendants' retaliating against Plaintiff and for terminating him based on his Political Association and support for a candidate opposing Mayor Sayegh, thereby violating a clear mandate of public policy affecting public health, safety or welfare.

223.   As outlined above, Plaintiff reported the criminal activity of Councilman McKoy, and for doing same, was terminated from his employment.

224.   In writing, Plaintiff placed a written complaint of criminal activity committed by Councilman McKoy, who is able to control Plaintiff's employment, including termination of same.

225.   Plaintiff placed his written complaints of criminal harassment directly with the City of Paterson Police Department on November 1, 2020.

226.   Plaintiff was terminated on November 4, 2020 from his position with the City of Paterson.

227.   As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in loss of companionship, loss of self-esteem, loss of standing in the community, physical and

mental injury, the loss of opportunity for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

## COUNT XII

### *(Intentional Infliction of Emotional Distress)*

228.    Plaintiff repeats and realleges the above-mentioned allegations contained in paragraphs 1-227 as if fully set forth herein

229.    The Defendants' conduct specified above was so extreme in degree as to be utterly intolerable in a civilized society.

230.    The Defendants' conduct was certain to cause emotional distress to the Plaintiff.

231.    The emotional distress suffered by the Plaintiff was so extreme that no reasonable person can be expected to endure it.

232.    The Defendants acted with malice or willful disregard for the Plaintiff's rights.

233.    As a result of the Defendants' actions, the Plaintiff suffered serious injury and damage.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly, severally and alternatively, for Damages including: back pay and front pay (or equitable reinstatement); Compensatory, Liquidated, Consequential,  Ancillary  and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post- judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute: Costs of suit and any other relief this Court deems just.

*THE MARK LAW FIRM, LLC*
Attorneys for Plaintiff Omar Ledesma

_____

Jamison M. Mark, Esq.
(Attorney ID No. 042392000)
jmark@newjerseyattorneys.com
675 Morris Ave Suite 102
Springfield, New Jersey 07081
T: (973) 845-6606 (main)

Dated: August 11, 2021

## DESIGNATION OF TRIAL COUNSEL

Trial Counsel is hereby designated as Jamison M. Mark, Esq.

*THE MARK LAW FIRM, LLC*
Attorneys for Plaintiff Omar Ledesma

_____

Jamison M. Mark, Esq.
jmark@newjerseyattorneys.com

Dated: August 11, 2021

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues triable by jury.

*THE MARK LAW FIRM, LLC*
Attorneys for Plaintiff Omar Ledesma

_____
Jamison M. Mark, Esq.
jmark@newjerseyattorneys.com

Dated: August 11, 2021

37